him in insuring the property, and in collecting the insurance.

Plaintiff and defendant each claim to be the owner of the property insured, and entitled to the insurance collected. The case was tried by a jury, and a verdict was returned by a vote of nine to three in favor of defendant, rejecting plaintiff's demand. Without asking for a new trial plaintiff appealed.

Plaintiff urges that the result of the trial is due to an erroneous ruling of the court. Plaintiff offered in evidence a sale by notarial act from him to defendant, executed some four months after the fire, by which plaintiff sold to defendant a part of the property, not destroyed by the fire; in fact, all of the property, not so destroyed, save a few articles, which he reserved from the sale. The trial court, over plaintiff's objection, it is urged, received parol evidence, the effect of which was to make it appear that this notarial act, which purports upon its face to be a straight sale, was, in fact, a settlement between the parties litigant of their differences. Defendant admits the execution of the instrument. The evidence objected to did not tend to destroy the title conveyed; but its only tendency was to explain the true consideration and purport of the act by showing that the purpose of the act was to effect a settlement and not to make a sale. There was a conflicting mass of evidence before the court and jury, and some explanation became appropriate, if it could be given, of the real purpose of the act to rebut any inference that might possibly arise to the effect that, as defendant had purchased from plaintiff nearly all of the remnant of the property left by the fire, plaintiff must have been the owner of that destroyed

by fire also, as the fire was not likely to destroy defendant's property mingled with that destroyed and permit plaintiff's property to escape. Defendant testified that he was purchasing what was considered plaintiff's working interest in the property, and that this, at least inferentially, was the settlement reached as to that interest. The court did not err in admitting the evidence.

The case may be described as one conflicting mass of evidence. It raises only questions of fact, so conflicting that even counsel has not attempted to review the facts to any appreciable extent in their briefs. In reality, the only way to form an opinion is by a careful reading of the evidence. The case was one peculiarly for the jury. Our reading of the record, which was done with care, impresses us with the fact that the verdict of the jury, all things said, is correct. Certainly, we are not justified in disturbing it.

For these reasons, the judgment below, resting upon the verdict of the jury, is affirmed.

156 So. 213

**LOUISIANA STATE RICE MILLING CO., Inc., v. McCOWAN et al.**

No. 32770.

July 2, 1934.

Modisette & Adams, of Jennings, for appellant.

John B. Fournet, of Jennings, and Hawkins & Pickrel, of Lake Charles, for appellees.

ROGERS, Justice.

Alleging they had confirmed a sale of 1,750 bags of Blue Rose rice made to it by W. D. Jones, a broker, the Louisiana State Rice Milling Company, Inc., sued J. E. McCowan and S. Goldsmith for specific performance, or, in the alternative, for damages for nonperformance, of the contract. By supplemental petition, plaintiff obtained the sequestration of the rice. Defendants bonded the sequestration and moved to dissolve the writ. Their motion was denied and the case was then tried on its merits, resulting in a judgment for plaintiff, recognizing the contract sued on as a sale and condemning defendants in solido for costs. Defendants having disposed of the rice, plaintiff's demand for specific performance was rejected, and its alternative demand for damages was also rejected. From this judgment, plaintiff has appealed.

Plaintiff relies on the following grounds to obtain a reversal of the judgment from which it appeals, viz.:

1. That the court erred in not ordering defendants' motion to dissolve the sequestration to stand as an answer to the merits.

2. That the court erred in maintaining as paramount defendants' right to test in·a summary manner the writ of sequestration, notwithstanding the merits of the case were involved in the trial of the motion to dissolve.

3. That the court erred in holding, after a second trial on the merits, no damages were due plaintiff as a result of defendants' breach of the contract.

We do not find it necessary to discuss the first two grounds of complaint urged by plaintiff. They are governed by the decision of this court in plaintiff's suit against Christopher C. Potter, where plaintiff raised the identical questions it has presented here. The decision in the Potter Case is unfavorable to

plaintiff's contentions. See Louisiana State Rice Milling Co., Inc. v. Potter, 179 La. 197, 153 So. 690.

Plaintiff's third ground of complaint turns exclusively on questions of fact. The trial judge found as facts that the contract between the parties was a sale and not an option as contended by defendants; that at the time defendants refused to deliver the rice the price had not advanced appreciably; that plaintiff. had never paid defendants for the rice; and, therefore, plaintiff was not damaged by the breach of the contract. These findings of fact are amply sustained by the evidence.

▆▆▆ The record discloses that the defendant J. E. McCowan is a rice farmer and that the defendant S. Goldsmith is a merchant, who, as a creditor of McCowan, the owner, held the rice as pledgee, in possession of the warehouse receipts, with the right to sell the rice as he saw fit. For a number of months prior to the execution of the contract sued on the rough rice market was dormant, with prices lower than the cost of production. The representatives of the plaintiff milling company evidently believing that the market price of rice was due for an advance, authorized W. D. Jones, a broker of Welsh, La., to purchase in his territory about 25,000 bags of rice at a price slightly in advance of previous quotations. Jones, accordingly, submitted offers to the defendants and other owners and pledgees to buy their rice at certain stipulated prices, provided a total of 25,000 bags could be obtained within a given time. Defendants accepted the offer, thereby creating a conditional sale, which became executory by the happening of the condition and

notification to defendants. The rice was in warehouses and in the constructive possession of the defendant Goldsmith, as the holder of the warehouse receipts. Pending the fulfillment of the condition, title was not transferred. When the condition was fulfilled title immediately passed, so far as the parties were concerned, subject to weighing or measuring the rice and the payment of the purchase price. Civ. Code, arts. 2456, 2458, 2471, 2041.

The deal between the parties was closed on April 13, 1933. However, there is a conflict in the testimony as to when delivery of the rice was demanded and refused. Defendants' testimony shows that the default occurred on April 17, 1933, whereas plaintiff's testimony shows that the default occurred on April 20, 1933. It is not disputed that on April 17, 1933, no appreciable change had taken place in the market value of rice. It is disputed that a considerable advance occurred in the price of rice on April 20, 1933. But the testimony is not convincing that the advance in price occurred on that date, although it is convincing there was a considerable rise in the price of rice on April 24, 1933.

▆▆ But assuming plaintiff's version is correct, and that defendants' default occurred on April 20, 1933, and that the market began to advance on that day, we still do not think plaintiff is entitled to any recovery.

As soon as the deal was closed plaintiff had the right to demand that the rice be immediately weighed or measured, in order to perfect the sale by delivery and payment of the purchase price. Plaintiff could not unreasonably delay the exercise of its right and

payment of the price, with the rice at the vendors' risk, and select a time for demanding delivery when the market was advancing and thus fix the measure of defendants' liability for their failure to deliver. National Wholesale Grocery Co. v. Simon Rice Milling Co., 152 La. 2, 92 So. 713; Garrison & Son v. Sherill Hardwood Lumber Co., 156 La. 147, 100 So. 253.

During the interval between April 13, 1933, and April 20, 1933, there was no appreciable change in the market price of rice. During this period, which was ample for the completion of the sale, plaintiff could have tendered defendants the purchase price and demanded the delivery of the rice. On defendants' failure to make delivery, plaintiff could have saved itself from loss by purchasing rice of the same grade on the open market. The duty rested upon plaintiff to protect itself, as well as the defendants, by a diligent exercise of its rights. It would be unfair to permit plaintiff to await an advance in prices, and to select its own time during a rapidly rising market at which to make a demand for the delivery of the goods.

As was well said in Garrison & Son v. Sherill Hardwood Lumber Co., 156 La. 147, 100 So. 253, 254:

"The creditor cannot be permitted to demand the performance of the contract, after an unreasonable delay and in the face of an advancing market, as such damages are speculative, and were not in the contemplation of the parties at the time the contract was made.

"Nor can a party claim damages for the nonperformance of a contract as to which he himself is in default."

For the reasons assigned, the judgment appealed from is affirmed.